**TAB 2**

Westlaw.

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Donald and Lisa SMITH
v.
LITTON LOAN SERVICING, LP, et al.
No. Civ.A.04-02846.

Feb. 4, 2005.

Donald Smith, Bala Cynwyd, PA, pro se.

Lisa Smith, Bala Cynwyd, PA, pro se.

Daniel S. Bernheim, Silverman Bernheim & Vogel, Philadelphia, PA, for Defendant.

*MEMORANDUM OPINION*

PRATTER, J.

I. FACTUAL BACKGROUND, PROCEDURAL HISTORY AND SUMMARY DECISION

*1 On June 28, 2004, Plaintiffs Donald Smith [FN1] and Lisa Smith, *pro se,* (the "Smiths") filed their Verified Complaint (the "Complaint"). There is no indication in the record that the Defendants, Litton Loan Servicing, LP ("Litton") and Credit-Based Asset Securitization, LLC ("CBAS") (and, collectively, "Defendants") were ever properly served with the Complaint. The case was reassigned on August 6, 2004, to this Court (Docket No. 3). Defendants Litton and CBAS filed the Motion to Dismiss the Complaint, along with a certificate of service, on October 8, 2004 (Docket No. 4). The certificate of service attached to the Motion to Dismiss indicated that the motion was sent to the Smiths' residence at 241 Righters Ferry Road, Bala Cynwyd, Pennsylvania, 19004 (the parcel of property at issue in this matter) (the "Smith Property"). The Smiths never responded to the Motion to Dismiss, even after it was confirmed that the Smiths received a copy of the Motion to Dismiss, by hand delivery, and the Court ordered them to file a response. *See* Order, filed January 7, 2005 (Docket No. 8).

FN1. Donald A. Smith is known to also use the names "Donald Smith" and "Donald Muhammad El Ali".

In an attempt to remedy the delay in adjudicating this matter and to inquire of the Smiths why they had failed to properly serve the Complaint on the Defendants and thereafter had failed to respond to the Defendants' Motion to Dismiss, on December 7, 2004, the Court notified the Smiths, Litton and CBAS that it would hold an initial pretrial conference (an "IPTC") on January 4, 2005, in a courtroom to be designated, at the United States Courthouse, Sixth and Market Streets, Philadelphia, Pennsylvania (Docket No. 6). In the notice, the parties were instructed to call the Court prior to January 4, 2005, to ascertain the exact courtroom for the IPTC. On or about December 29, 2004, the Court attempted to contact the Smiths at each of the phone numbers provided to the Court on the Case Management Track Designation Form (Docket No. 1), specifically (215) 729-7474 and (610) 667-5474. Messages were left at both numbers to remind the Smiths of their obligation to attend the IPTC, to complete the Rule 16 attachment to the Notice and, pursuant to both the Notice and Fed.R.Civ.P. 26(f), to confer with opposing counsel regarding a proposed scheduling order for this case. The Smiths neither returned the Court's calls nor conferred with counsel prior to the conference. Moreover, despite being given more than ample notice of the IPTC, the Smiths failed to attend the scheduled initial pretrial conference, did not bother to warn the Court or opposing counsel that they were not going to attend and provided no excuse for their failure to respect the scheduling of the conference. [FN2] Nevertheless, on January 5, 2005, a woman claiming to be Florence Mason, who is not a party to this action, but an associate of the Smiths, who also alleged that she was Donald Smith's "goddaughter" and one of the residents of the Smith Property, contacted the Court by telephone to allege that Donald Smith was unable to attend the January 4, 2005 IPTC because Lisa Smith, the other plaintiff in this matter, had erased the voicemail left by the Court. [FN3] Ms. Mason also claimed that the Smiths either did not receive Notice from the Court or that it just arrived a few days prior to the initial IPTC. [FN4] Ms. Mason failed to acknowledge that Lisa Smith, as one of the plaintiffs, was just as responsible for attending the IPTC (and therefore, Mrs. Smith, if she did erase the message before Mr. Smith heard it, is just as culpable as her husband for failing to appear at the IPTC).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN2. Unfortunately, this was not a one-time oversight. If there was any reason to see this as an unfortunate mistake not likely to happen again, the Court would certainly be inclined to give Plaintiffs the benefit of the doubt. Apparently, however, Mr. Smith frequently fails to comply with the rules of the court or to attend scheduled conferences. After Mr. Smith failed to attend this Court's initial pretrial conference, the Court determined from various court dockets that Mr. Smith has been the debtor / plaintiff / appellant in *at least* the following civil actions, all of which were dismissed due to major deficiencies with Mr. Smith's filings and/or his demonstrated attitude toward the Court, *inter alia,* failure to provide documentation as ordered by the court and/or failure to comply with court orders or procedures:

(1) *In re: Smith,* 04-bk-18913 (Donald A. Smith, *a/k/a* Donald Muhammad El Ali, 241 Righters Ferry Road, Bala Cynwyd, Pennsylvania) Chapter 13 bankruptcy action finding that the case was Mr. Smith's fifth bankruptcy action since 2001, *Hearing Tr. of Oct. 26, 2004 at 4-5, 30-32,* and in which an order was issued on October 27, 2004, *dismissing the case with prejudice* and decreeing that the Debtor, either individually or jointly, is "prohibited from filing any subsequent bankruptcy case within 180 days from the date hereof, without prior leave of the Court; and [a]ny request to file a new case must be made by Motion under the docket number of this case". Thereafter, on December 28, 2004, the bankruptcy court dismissed Smith's "Motion to Deny Chapter 13 Standing Trustee's Motion to Dismiss and Marked Upon It'[sic] Face Striken [sic] from the Record as Unconstitutional, Overburdensome and a Direct Violation of this Affiant Victim's Constitutional Right(S)";

(2) *In re: Smith,* 04-bk-13315 (Donald A. Smith, *a/k/a* Donald Muhammad El Ali, 1517 Tasker Street, Philadelphia, Pennsylvania). Chapter 11 bankruptcy case *dismissed* on March 31, 2004, for Debtor's failure to appear at scheduled hearing on March 29, 2004 and for failure to timely file documents as required by court order dated March 8, 2004.

(3) *In re: Smith,* 04-cv-0674 (Rufe, J.) (Donald A. Smith, 1517 Tasker Street, Philadelphia, Pennsylvania). Bankruptcy appeal *dismissed* for failing to comply with Rule of Bankruptcy Procedure 8006;

(4) *In re: Smith,* 03-cv-6416 (Rufe, J.) (Donald A. Smith, a/k/a Donald Muhammad Ali, 1517 Tasker Street, Philadelphia, Pennsylvania). Bankruptcy appeal *dismissed* for failing to comply with Rule of Bankruptcy Procedure 8006;

(5) *In re: Smith,* 03-bk-32156 (Chapter 13 bankruptcy case *dismissed* by the bankruptcy court for continued delinquency to pay court filing installment fee. Bankruptcy court permitted creditors relief from the automatic stay with respect to both the 1517 Tasker Street, Philadelphia property and the 241 Righters Ferry Road, Bala Cynwyd property and prohibited Debtor from filing another bankruptcy case for 180 days) (appeals *dismissed* by Judge Rufe, 03-cv-6416 *and* 04-cv-674);

(6) *In re: Smith,* 03-bk-14635 (Donald A. Smith, 1517 Tasker Street, Philadelphia, Pennsylvania) (Chapter 13 bankruptcy case *dismissed* pursuant to motion by bankruptcy trustee);

(7) *Donald Smith* ex rel. *Donald Muhammad El Ali v. Tiger Relocation Co.,* 02-cv-8222 (Hutton, J.) (Donald Smith, 1634 South Yewdall Street, Philadelphia, Pennsylvania-this is also the address used frequently by Florence Mason). Case *dismissed* for failure to state a claim upon which relief could be granted and because Smith's filings were "incoherent and rambling with no basis in law.");

(8) *Donald Smith* ex rel. *Donald Muhammad El Ali v. Altegra Credit Co. and Louis Vitti,* 02-cv-8221 (Surrick, J.) (Donald Smith, 1634 South Yewdall Street, Philadelphia, Pennsylvania-this is also the address used frequently by Florence Mason). Smith's Amended Complaint *dismissed, with prejudice,* after consideration of the factors set forth in *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863 (3d Cir.1984), for failure to prosecute, *inter alia,* failure to participate, without reasonable excuse, in five (5) of the court's scheduled pretrial conferences of Jan. 29, 2004, Apr. 29, 2004, May 28, 2004, August 24, 2004\* and August 27, 2004.
[*involvement of Florence Mason* ]
\* With regard to the pretrial conference before Judge Surrick on August 24, 2004, Ms.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Florence Mason appeared in court to provide excuses for Mr. Smith's absence. In the court's memorandum discussing the reasons for dismissing Mr. Smith's claims with prejudice, see *Altegra Credit Co.*, 2004 WL 2399773 at *1, 3 (E.D. Pa. Sept 22, 2004), 02-cv-8221 (Docket No. 52), the court also noted that Ms. Mason had previously attempted, with regard to a pretrial conference scheduled for January 29, 2004, to intervene on Mr. Smith's behalf and to make excuses for his unavailability.

As discussed above, Ms. Mason confirmed in her phone call to this Court that she is not a lawyer, but Mr. Smith's "goddaughter" and a resident at the 241 Righters Ferry Road address. As a matter that prompts considerable concern, this Court has also discovered that Ms. Mason has filed strikingly similar claims in both the Bankruptcy Court and District Court for the Eastern District of Pennsylvania. In fact, there appears to be virtually a syndicate of frivolous filers (including Bernice June Goodwin-Burris, Nathaniel Miller, Eva Highsmith, Winifred (or Winfred) Highsmith), many who seem to be associated with Ms. Mason, who file baseless claims within the courts of the Third Circuit, with little to no legal support, in an effort to delay and frustrate their creditors. With regard to Ms. Mason, the court has discovered the following:

(i) *Florence Mason, et al. v. Madi Jonny, Coldwell Bankers Realty Co. and David Smith,* 05-cv-0400 (*Pro se* Plaintiffs Florence Elizabeth Mason, 1634 South Yewdall Street, Philadelphia, Pennsylvania, and Mark Wesley Fordham, 5914 Horrock Street, Philadelphia, Pennsylvania) Complaint and Motion for Temporary Restraining Order to prevent Defendants from selling four (4) properties, *filed on January 28, 2005.*

(ii) On January 12, 2004, pursuant to the Mortgage Bankers and Brokers and Consumer Equity Protection Act, a Final Order was issued against Florence Mason's Mason's Fund Finders ("Mason's") revoking Mason's mortgage broker license for failure to provide an examiner from the Pennsylvania Department of Banking with access to the place of business and the licensee's records, failure of Ms. Mason to comply with her obligation to notify the Department of a change of address, and Mason demonstrating a continuing pattern of unavailability to the Department. *See In the Matter of Mason's Fund Finders,* Commonwealth of Pennsylvania Department of Banking, Docket No. ENF-2002-04 (http://www.banking.state.pa.us/banking/cwp/view.asp?a=1302 & q=528426 (last visited Jan. 31, 2005). At the time of the decision, notice was forwarded to Ms. Mason's new address, 1634 South Yewdall Street, Philadelphia, Pennsylvania.

(iii) *In re Mason,* 04-bk-17956 (Florence E. Mason, UCC 1-207, 6611 North 11th Street, Philadelphia, PA 19126, with her mailing address listed as: "Non-Domestic Non Resident, c/o 1624[sic] South Yewdall Street, Philadelphia, PA 19143-9999") Chapter 11 bankruptcy case *dismissed* for Ms. Mason's failure to file a bankruptcy case on her own behalf (in fact, this case was filed on behalf of Eva Highsmith and Winifred N. Highsmith, litigants who the Bankruptcy Court barred from filing future claims without leave of Court) and instructing Ms. Mason, because of glaring legal and procedural deficiencies in her filings, that any future petition filed with the bankruptcy court "must be affixed with her signature thereon under penalty of perjury as to the information provided[,]" without reservation. On appeal, the District Court, 04-cv-3497 and 04-cv-3720, denied Ms. Mason's appeal (a) for failure to comply with Rule of Bankruptcy Procedure 8006 and (b) for lack of jurisdiction because Mason's notice of appeal was not timely filed.

(iv) *Florence Elizabeth Mason v. Commonwealth,* 03-cv-0139 (Florence Elizabeth Mason, c/o 1634 South Yewdall Street, Philadelphia, Pennsylvania) Motion to Remove criminal proceeding to federal court *dismissed as frivolous* (citing *Younger v. Harris,* 401 U.S. 37 (1971) for the proposition that "federal courts may not enjoin state court criminal proceedings"). Ms. Mason was attempting to challenge the order of Judge DeLeon, of the Philadelphia Municipal Court, Criminal Section, permitting Jacqueline Burrell to take possession of the property at 2136 North 32nd Street, an address Ms. Mason had been using for the Mason's Fund Finders business. (Docket No. 2); *In the Matter of Mason's Fund Finders,* Commonwealth of Pennsylvania Department of Banking,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Docket No. ENF-2002- 04, Proposed Report, Proposed Findings of Fact ¶ 33 (http://www.banking.state.pa.us/banking/cwp/view.asp?a=1302 & q =528426 (last visited Jan. 31, 2005)).
[*continuation of subpart (8)*, supra ]
Furthermore, following the August 27, 2004, Pretrial Conference in Judge Surrick's Court, counsel for Altegra Credit Co. provided a letter, dated September 1, 2004, to the Court, as requested, discussing counsel's previous observations of Ms. Mason regarding her influence in other parties' bankruptcy actions and challenges to their creditors. At a minimum, it appears from the September 1 letter that Ms. Mason has also involved herself in the following matters: *In re Bernice June Goodwin-Burris*, 03-bk-33199 (Chapter 13 filing); *In re Burris*, 04-cv-0137 (Chapter 13 appeal); *In re Burris*, 04-bk-13627 (Chapter 11 filing) and *In re Burris*, 04-cv-2838 (Chapter 11 appeal). Apparently, Ms. Mason also attempted to assist with the matter of *In re Nathaniel Miller*, 03-bk-355534; however, Bankruptcy Judge Raslavich, upon hearing of Ms. Mason's previous conduct, refused to allow her to act on Mr. Miller's behalf. Mr. Miller has also been before this Court, *see* 04-cv-1325 (bankruptcy appeal), and marked the October 6, 2004, Order of this Court dismissing his bankruptcy appeal as "refused for fraud." *See* (Docket No. 4);
(9) *In re: Smith*, 01-bk-35945 (Chapter 13 bankruptcy proceeding) (Donald A. Smith, a/k/a Donald Muhammad Ali, 1517 Tasker Street, Philadelphia, Pennsylvania 19145) Case *dismissed* on December 6, 2001, because Smith failed to provide necessary documents; and
(10) *Adams, et al. v. Wyeth, Inc., et al.;* Donald A. Smith, 1517 Tasker Street, Philadelphia, Pennsylvania, was added as a plaintiff to this class action on Jan. 15, 2004.

FN3. During this phone conversation, Ms. Mason confirmed that she is not a lawyer and claimed that she was not trying to serve as Mr. Smith's legal counsel, but she believed that she had a right to assist Mr. Smith with this case. As additional background of the Smiths-Mason relationship, from the record in the matter that was before Judge Surrick, 02-cv-8221, *supra,* during the August 24, 2004 Pretrial Conference in that matter, Ms. Mason first referred to Mr. Smith as her father. *Tr.* at 7 (Ms. Mason: "Well, I don't know what's going on except for the fact that my father also had a bankruptcy case ...") (Docket No. 48). Additionally, on January 5, 2005, in her call to this Court, Ms. Mason claimed that she lived at the Smith Property; however, on the record, on August 24, 2004, *Tr.* at 14, 02- cv-8221 (Docket No. 48), Ms. Mason told the court that she lived in "South Philly." Ms. Mason's most recent filing with the court, *Mason, et al. v. Jonny, et al.,* filed January 28, 2005, 05-cv-0400, lists her address as 1634 South Yewdall Street, Philadelphia, Pennsylvania, *not* 241 Righters Ferry Road, Bala Cynwyd, Pennsylvania, as represented to this Court's Chambers staff on January 5, 2005. The South Yewdall Street address is consistent with Ms. Mason's other filings with the Bankruptcy Court and the District Court, discussed *supra.*

FN4. Regardless of allegations that Notice was not received, a docket entry made by the Clerk of the Court pursuant to Fed.R.Civ.P. 77(d) is conclusive proof that notice was given. *Ins. Co. of N. Am. v. Ahuja,* 1991 WL 249978 at *4 (E.D.Pa. Nov.19, 1991). Here, the docket reflects that the Clerk of the Court properly sent all notices and orders to the Smiths' address of record. Therefore, under the circumstances and in light of the history recounted above as well as the total lack of any stated reason from the Smiths for their non-attendance, the Court is compelled to conclude that the Smiths' refusal to attend the first IPTC and their failure to file a response to the Motion to Dismiss, as ordered by the Court, were willful and indicative of an unacceptable lack of interest in and respect for judicial process or procedure. Given the shrewdness demonstrated by Mr. Smith's numerous court filings (and some of the lengthy dockets thereof), discussed *supra,* there is no reason to expect that the cause was ignorance or innocent oversight.

*2 Following the Smiths' failure to appear, the Court learned that Mr. Smith has been a frequent litigant in the Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania and the United States Bankruptcy Court for the Eastern District of Pennsylvania. Additionally, following the IPTC, the Court received confirmation from Defendants that the Smiths again had been

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 5

served, by hand delivery, with a copy of the Defendants' Motion to Dismiss. Following the Smiths' receipt of the Motion to Dismiss, the Court notified the Smiths, again, by Federal Express delivery, that the Court would hold a second initial pretrial conference (the "Second IPTC") on January 27, 2005, in a courtroom to be determined. This notice was sent by separate envelope to both Donald Smith and Lisa Smith. The Court thereafter confirmed that each of these envelopes with the notice of the Second IPTC was delivered to the Smith Property and signed for by Donald Smith. [FN5]

> FN5. During the Second IPTC, Mr. Smith attempted to allege that his wife, Lisa Smith, never received notice of the conference and was working at her place of employment and, therefore, she could not attend. *See* Transcript for the Second IPTC, dated January 27, 2005, at 2-4 (hereafter, "Second IPTC *Tr.* at __") (Docket No. 13). Upon further inquiry by the Court, however, Mr. Smith acknowledged that he was attending the Second IPTC with the permission of Lisa Smith to represent her interests in this matter. *Id.* at 3-4.

Two days prior to the scheduled Second IPTC, on January 25, 2005, Donald Smith arrived at the Clerk's Office to file (1) a Motion for Temporary Restraining Order and Injunctive Relief (the "Motion for a TRO") and (2) Plaintiffs' Amended Complaint. Mr. Smith also requested to speak with the Judge or one of her clerks. The reason for Mr. Smith's eleventh-hour filings appears to be that, pursuant to a letter dated November 17, 2004 (i.e., two months earlier) that the Smiths received from the law offices of Federman Phelan, LLP, a Writ of Execution No. 03-04789 had been issued by the Court of Common Pleas of Montgomery County, Pennsylvania, permitting the Smith Property to be sold at the Sheriff's Sale on January 26, 2005. The Writ had been stayed pending resolution of Mr. Smith's Chapter 13 Bankruptcy filing in the United States Bankruptcy Court for the Eastern District of Pennsylvania, 04-bk-18913.

Upon examination, it appears that on March 17 2003, in the Montgomery County Court of Common Pleas, CBAS had filed a mortgage foreclosure action (No. 03-04789) against Donald Smith, Lisa Smith and Donald Muhammad El Ali, Trustee of El-Ali Family Banking Trust (the "Foreclosure Action"). According to the docket, [FN6] maintained by the Prothonotary of Montgomery County, for the Foreclosure Action, on April 27, 2004, the Montgomery County Court of Common Pleas entered judgment in favor of CBAS and against the Smiths. Furthermore, the foreclosure and sheriff's sale documentation indicates that title to the Smith Property is vested in Donald Muhammad El Ali (Trustee) El-Ali Family Banking Trust (the "Trust") and Lisa Smith. Donald Smith conveyed his interest in the Smith Property to the Trust by deed dated March 8, 2001, with recordation occurring December 17, 2001.

> FN6. The Court last reviewed the docket for the state Foreclosure Action on January 28, 2005. *See* http://12.40.122.125/FCP2.WEB8/0/P12DIS?CASE-NO=03-04789.

After reviewing the dockets for the respective matters within these courts, and with due respect to Mr. Smith's right to act on his own behalf in these matters as counsel, *pro se,* this Court, at the Second IPTC, on January 27, 2005, attempted to discuss with Mr. Smith the legal issues on which his claims are predicated. [FN7] The Court also attempted to explain to Mr. Smith the dichotomies that exist with regard to the jurisdiction and powers of the federal and state courts, respectively. Because of the complexities involved with matters regarding bankruptcy and disputes between debtors and creditors, the Court attempted to impress upon Mr. Smith that it may be most prudent for him to attempt to locate counsel to assist with any future filings within the state or federal courts. *See* Second IPTC *Tr.* at 15-18, 23-24 (Docket No. 13).

> FN7. Prior to the Second IPTC, the Court sent Notice to the Smiths, by express mail (Federal Express), which was received and signed for by Donald Smith and read:
> AND NOW, this 6th day of January, 2005, upon consideration of the Complaint, the Motion to Dismiss the Complaint and the Memorandum of Law in Support, filed by Litton Loan Servicing, LP, and Credit-Based Asset Securitization, LLC (Docket No. 4), the failure of Plaintiffs Donald Smith and Lisa Smith to respond within fourteen (14) days to the Defendants' Motion to Dismiss or respond at all, pursuant to Local Civil Rule 7.1(c), the failure of Plaintiffs Donald Smith and Lisa Smith to attend the Initial Pretrial Conference, held at the United States Courthouse, 601 Market Street, Philadelphia, on January 4, 2005, at 9:30 a.m., pursuant to notice sent by the Court on December 7, 2004, to the Plaintiffs' address at 241 Righters Ferry Road, Bala Cynwyd,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 6

Pennsylvania, 19004, and the fact that Plaintiffs were notified by the Court at the telephone numbers provided to the Court on the Case Management Track Designation Form, dated June 28, 2004, and, additionally, in consideration of Mr. Smith's failure to appear for previous court-scheduled conferences or respect prior court notices and orders in the matter of *Donald Smith* ex rel. *Donald Muhammed El Ali v. Altegra Credit Co., et al.,* 02-cv-8221, and in consideration of the respective records in Mr. Smith's previous bankruptcy filings in the United States Bankruptcy Court for the Eastern District of Pennsylvania (Philadelphia), specifically, bankruptcy dockets 04-18913 and 03-14635, IT IS HEREBY ORDERED that:

1. Plaintiffs Donald Smith and Lisa Smith are ordered to provide a response to Defendants' Motion to Dismiss the Complaint within 20 days of the date of this Order, specifically, by January 26, 2005;

2. If Plaintiffs do not respond to the Motion to Dismiss by January 26, 2005, the Court will address dismissing this case WITH PREJUDICE upon further motion of Defendants, which motion should delineate, with specificity, all efforts made to serve Plaintiffs with copies of the pending Motion to Dismiss and to otherwise communicate with Plaintiffs concerning this case;

3. If Plaintiffs Donald Smith and/or Lisa Smith receive any non-clerical assistance, legal or otherwise, in drafting and submitting any further documents to this Court, including with regard to the response to the Motion to Dismiss, the Court *shall be notified in writing* of the name or names of the person or persons who assisted with the drafting or submission. Specifically, Florence Mason, Nathaniel Miller, or June Bernice Goodwin-Burris *shall not* assist substantively with the drafting of any documents submitted to this Court without the explicit, written permission from this Court;

4. If the Court schedules any additional conferences or hearings, Plaintiffs Donald Smith and/or Lisa Smith shall attend those conferences, as scheduled, or notify the Court by telephone at least 24 hours in advance of the conference or hearing with a detailed explanation for their inability to attend. If Plaintiffs are unable to speak with a member of the Court's staff [ ], Plaintiffs shall provide the Court with a telephone number at which they can be reached; and

5. This Court's orders will be strictly enforced. Any future failure to comply with the Court's notices or orders by the Plaintiffs will result in this matter being dismissed with prejudice and imposition of sanctions, as appropriate, on any and all individuals failing to comply with the Court's orders.
It is so ORDERED.

\*3 Nonetheless, for the reasons stated herein, it seems abundantly clear to this Court, applying due deference and liberal leniency to Mr. Smith because he chooses to file his actions as a *pro se* litigant, this Court finds that (1) Mr. Smith is a frequent filer of intentionally frivolous claims in the Bankruptcy Court and against his creditors in the District Court, (2) he does not seem to understand or respect the Rules of Civil Procedure, [FN8] the integrity, decisions, rulings and orders of the federal courts and, (3) as a result of these repetitive frivolous filings, Mr. Smith (and those who may be assisting him in filing such claims) is an abuser of the judicial system.

> FN8. On February 2, 2005, the Smiths faxed a one-page document to the Court titled "Notice." Not only is this document rife with grammatical and spelling mistakes which the court is overlooking in an effort to divine whatever merit there may be to the substance of the communication, but the Smiths wrongfully allege that it is the Defendants who are in violation of the Rules of Civil Procedure for failing to answer the Smiths' Complaint. In fact, as stated above, it is the Smiths, in contempt of the clearly-worded Order of this Court, dated January 7, 2005, who failed to file the required response to the Defendants' Motion to Dismiss, filed October 8, 2004. *See* Local Rules of Civil Procedure 7.1(c). The Smiths' required response to the Defendants' Motion to Dismiss initially should have been filed within fourteen (14) days of that motion's service upon them. *Id.* Nevertheless, the Court's Order of January 7, 2005, required the Smiths to file a response to the Motion to Dismiss by January 26, 2005. No such response was filed and no adequate explanation for the Smiths' failure to comply with the Court's Order has been provided. *See* Second IPTC *Tr.* at 11-15. Then, during the Second IPTC, the Court inquired several times of Mr. Smith what he intended to do

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 7

inasmuch as he had neglected to respond to the Motion to Dismiss. Therefore, at a minimum, it is disingenuous for the Smiths to now allege that the Defendants (who have complied with all of the required procedures) have somehow acted improperly here. This most recent filing is an additional abusive attempt by the Smiths to divert attention away from the fact that their claims are, once again, without legal or factual merit.

Furthermore, the Court would be remiss in failing to highlight the abject quality of the Smiths' submission on February 2, 2005 and Mr. Smith's limited advocacy skills displayed during the Second IPTC, *see Tr.* (Docket No. 13), instances that clearly punctuate the Smiths' lack of command over controlling law and procedures, despite Mr. Smith's numerous legal filings, when considered in conjunction with the Smiths' ten-page Motion for a TRO and the Court's discussion during the Second IPTC with Mr. Smith regarding whether he was receiving any legal counsel or assistance with regard to his legal submissions and representations. Notwithstanding the poor quality of the February 2, 2005 "Notice" and Mr. Smith's unfounded and unpersuasive arguments during the Second IPTC, the Motion for a TRO, filed on January 25, 2005, contains relatively well-drafted prose and decent case citations. In short, the gaping differences in quality between various filings on the Smiths' behalf and the in-person or extemporaneous communications from Smith make the conclusion inescapable that Smith's *pro se* status is only sometimes accurate. Thus, it seems highly unlikely, as Mr. Smith represented to this Court during the Second IPTC, that no one is helping him with the drafting of his legal arguments. *See Tr.* at 20-22. Therefore, the Court can not but doubt that Mr. Smith spoke with candor or accuracy in response to the Court's repeated inquiry regarding the Smiths' receipt of outside assistance in drafting their legal arguments. Such lack of candor only augments the array of reasons for the Court's conclusions and directives as to the Smiths.

Therefore, upon consideration of the Complaint, the Defendants' Motion to Dismiss the Complaint, with prejudice, and the Memorandum of Law in Support, filed by Litton Loan Servicing, LP, and Credit-Based Asset Securitization, LLC (Docket No. 4), the failure of Plaintiffs Donald Smith and Lisa Smith to respond within fourteen (14) days to the Defendants' Motion to Dismiss or respond at all, pursuant to Local Civil Rule 7.1(c), the failure of Plaintiffs Donald Smith and Lisa Smith to attend the Initial Pretrial Conference, held at the United States Courthouse, 601 Market Street, Philadelphia, on January 4, 2005, at 9:30 a.m., pursuant to notice sent by the Court on December 7, 2004, to the Plaintiffs' address at 241 Righters Ferry Road, Bala Cynwyd, Pennsylvania, 19004, and the fact that Plaintiffs were notified by the Court at the telephone numbers provided to the Court on the Case Management Track Designation Form, [FN9] dated June 28, 2004, and, additionally, in consideration of Mr. Smith's failure to appear for previous court-scheduled conferences and respect the court's notices and orders in the matter of *Donald Smith ex rel. Donald Muhammed El Ali v. Altegra Credit Co., et al.,* 02-CV-8221, and in consideration of the respective records in Mr. Smith's previous filings in the United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania and the United States Bankruptcy Court for the Eastern District of Pennsylvania, and with due consideration of Plaintiffs' Amended Verified Complaint (Docket No. 10), Plaintiffs' Motion for Temporary Restraining Order (Docket No. 11), the discussions between the parties and the Court during the Second Initial Pretrial Conference, held by the Court on January 27, 2005 (*see* Docket No. 12), the document titled "Notice" faxed to the Court by the Smiths on February 2, 2005, and Plaintiffs' failure to file a response to Defendants' Motion to Dismiss, as ordered by this Court, filed on January 7, 2005 (Docket No. 8), for the reasons stated below, Defendants' Motion to Dismiss is GRANTED, both Plaintiffs' Complaint and Amended Complaint are DISMISSED and the Motion for Temporary Restraining Order is DENIED, with prejudice. Furthermore, for the reasons discussed in greater detail below, this Court will order that neither Donald Smith, Donald A. Smith, Donald Muhammad El Ali nor Lisa Smith shall file or assist in filing any further actions within the United States Bankruptcy Court for the Eastern District of Pennsylvania or within the District Court for the Eastern District of Pennsylvania without providing due notice to this Court, as delineated below.

FN9. (215) 729-7474 and (610) 667-5474.

II. JURISDICTION

*4 The court has original jurisdiction over these claims which involve alleged violations of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 8

Truth-In-Lending Act, 15 U.S.C. § 1635, *et seq.* (the "TILA"), the Fair Debt Collections Practices Act, 15 U.S.C. § 1601, *et seq.* (the "FDCPA"), and the related federal regulations, pursuant to 28 U.S.C. § 1331.

III. DISCUSSION

The Smiths are seeking rescission of a mortgage and note, dated December 22, 1998, regarding their residence at 241 Righters Ferry Road, Bala Cynwyd, Pennsylvania (hereafter, the "Smith Property"). They claim that the mortgage and note are void or voidable under federal law. The Smiths are seeking injunctive relief from the Court to prevent Litton and CBAS from foreclosing on their property. Furthermore, the Smiths are requesting that the Court issue a ruling to allow them to rescind the entire mortgage and note, thus providing the Smiths with clear title to the Smith Property, including any fixtures. They are also seeking monetary damages for each alleged violation of federal law by Litton and CBAS. In the Amended Complaint, the Smiths attempt to further rely upon a claim that the Defendants failed to disclose, and committed fraud with regard to, the Yield Spread Premium (the "YSP") contained within the mortgage documents.

Because the Plaintiffs have filed both a Complaint and, rather than respond to Defendants' Motion to Dismiss, as ordered by this Court, an Amended Complaint, the Court will herein discuss, pursuant to Fed.R.Civ.P. 12(b)(6), that, despite the Court's most indulgent review of the allegations proffered in both Plaintiffs' Complaint and Amended Complaint, they have failed to state a claim upon which any relief could be granted. [FN10] The Smiths have also failed to convince this Court that they are entitled to the extraordinary relief requested in their Motion for a Temporary Restraining Order.

> FN10. The claims and allegations from the original Complaint were not included within the Amended Complaint; therefore, it is unclear whether the Smiths intended to supercede the previous allegations with the Amended Complaint, which contains a single cause of action regarding the YSP. However, in an effort to be indulgent to *pro se* Plaintiffs, the Court will discuss, generally, the causes of action from both the Complaint and Amended Complaint.

*A. Standard of Review*

*1. The Motion to Dismiss*

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. *Winterberg v. CNA Ins. Co.,* 868 F.Supp. 713, 718 (E.D.Pa.2004). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the complainant's allegations as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), and must consider "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). A complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon,* 467 U.S. at 73; *see also, Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

*5 When considering a **motion to dismiss** pursuant to Rule 12(b)(6), the Court must limit its review to the facts stated in the Complaint and Amended Complaint, any documentation attached to the complaints, and matters of which **judicial notice** may be taken pursuant to Fed.R.Evid. 201. *See Commonwealth v. Brown,* 373 F.2d 771, 778 (3d Cir.1967); *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986). **Judicial notice** may be taken of matters within the public record without converting a **motion** to **dismiss** into a motion for summary judgment. 5A Wright & Miller, Federal Practice and Procedure, § 1364 at 140-41 (2004); *Kramer,* 937 F.2d at 773; *DiNicola v. DiPaolo,* 945 F.Supp. 848, 855 n. 2 (W.D.Pa.1996). However, if facts that are alleged to be true in a complaint are contradicted by facts that can be judicially noticed, the contradicted facts in the complaint are not to be deemed as true upon consideration of the motion to dismiss. 5A Wright & Miller, Federal Practice and Procedure, § 1364 (2004).

Here, upon consideration of the **Motion to Dismiss** and Defendants' arguments in support, *infra,* including (a) Defendants' reliance on the *Younger* abstention and *Rooker-Feldman* doctrines, and (b) the fact that Plaintiffs' allegations are barred by *res judicata,* and because the Court takes **judicial notice** of (1) the Montgomery County court docket with regard to the Foreclosure Action and (2) the other matters in which

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 9

Mr. Smith has attempted to prosecute within the federal court system, *supra*, this Court holds that the Smiths' complaints must be dismissed, in their entirety, for failure to state a claim because it is abundantly clear that they can prove no set of facts in support of their claims which would entitle them to relief. *See Conley*, 355 U.S. at 45-46.

(a) Res Judicata

The Defendants also argue that *res judicata* (claim preclusion) prevents the Smiths from bringing their claims in federal court. Under Pennsylvania law, *McGill v. Southwark Realty Co.*, 573 Pa. 704, 827 A.2d 430, 435 (Pa.Cmwlth.2003), a default judgment is *res judicata* with regard to transactions that occurred prior to the entry of judgment. Here, all of the claims asserted by the Smiths took place before the foreclosure judgment. Accordingly, CBAS argues that because the TILA claims would have been defenses to foreclosure, the entry of a default foreclosure judgment by the Montgomery County Court of Common Pleas constitutes a bar to the reassertion of the Smiths' claims in their attempt to collaterally attack the foreclosure judgment in this Court. This Court finds that all of the allegations and claims asserted by the Smiths took place before the foreclosure judgment, that the Montgomery County Court of Common Pleas issued a default judgment, on or about April 27, 2004, and that judgment constitutes *res judicata*, thus precluding this Court from further adjudicating any issues that should have been litigated within the Montgomery County Court of Common Pleas. *See McGill*, 827 A.2d at 435.

2. The Motion for a Temporary Restraining Order

*6 The test for a preliminary injunction and a temporary restraining order are the same. *Johnson v. Klyle*, 2004 WL 953148 at *3 (E.D.Pa. Mar.29, 2004). The granting of a temporary restraining order (a "TRO") is not a matter of right, but rather it is within the sound discretion of this Court. *See Spartacus, Inc. v. Borough of McKees Rocks*, 694 F.2d 947, 949 (3d Cir.1982); *Rottmann v. Pennsylvania Interscholastic Athletic Association, Inc.*, 2004 WL 2973970 at *5-6 (E.D.Pa. Dec.23, 2004). When considering a motion for a TRO, this Court must weigh four factors: (1) the likelihood of success on the merits; (2) the extent of irreparable injury from the conduct complained of; (3) the extent of irreparable harm to the defendants if a TRO issues; and (4) the public interest. *Clean Ocean Action v. York*, 57 F.3d 328, 331 (3d Cir.1995). Additionally, a TRO can be entered or denied without a hearing if the Court determines that there are no relevant facts in dispute. *See Bradley v. Pittsburgh Board of Educ.*, 910 F.2d 1172, 1175-76 (3d Cir.1990); see also, *Williams v. Curtiss-Wright Corp.*, 681 F.2d 161, 163 (3d Cir.1982). Similarly, as is the case with regard to the present matter, "[a] district court is not obliged to hold a hearing when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *See Bradley*, 910 F.2d at 1176.

This Court is denying the Smiths' Motion for a TRO because the following four factors weigh against further delay of the state Foreclosure Action: (1) as a matter of law, neither the Smiths' Complaint nor Amended Complaint can survive the Motion to Dismiss, much less lead to a verdict in Plaintiffs' favor on the merits of their claims; (2) the extent of irreparable injury from the conduct complained of is not so great, as Mr. Smith's numerous legal actions (all of which have now been dismissed, save the *Wyeth* class action, including the instant matter) have put him on due notice that the Smith Property was likely to be sold following the Foreclosure Action; (3) irreparable harm to the Defendants also is not insignificant, as they have been patiently waiting for years to eject the Smiths and (4) the Commonwealth has an important interest in resolving ejectment and foreclosure disputes, see *Prindable v. Ass'n of Apt. Owners of 2987 Kalakaua*, 304 F.Supp.2d 1245, 1262 (D.Haw.2003) (finding that foreclosure and ejectment proceedings are important state interests under the *Younger* doctrine). *See Clean Ocean Action v. York*, 57 F.3d 328, 331 (3d Cir.1995).

(a) The Abstention and Rooker-Feldman Doctrines

The Smiths ask this Court to enjoin the ongoing state Foreclosure Action in which they could have (or should have) raised certain claims and defenses in the Montgomery County Court of Common Pleas (or with an appeal to the appropriate state appellate court) to prevent foreclosure on the Smith Property. Unfortunately for the Smiths, this Court is without jurisdiction to consider their request for injunctive relief. *See Younger v. Harris*, 401 U.S. 37 (1971).

*7 The *Younger* abstention doctrine minimizes federal court interference with ongoing state court proceedings. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1200 (3d Cir.1992). Therefore, this Court must abstain where: "(1) there are ongoing state proceedings involving the would-be federal plaintiffs that are

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 10

judicial in nature, (2) the state proceedings implicate important state interests, and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Middlesex County*, 457 U.S. at 432; *Gwynedd Properties*, 970 F.2d at 1200.

Here, the Foreclosure Action is a prior pending state court proceedings that is directly related to the dispute that the Smiths seek to bring to federal court. Additionally, the Commonwealth has an important interest in resolving ejectment and foreclosure disputes. *See Prindable v. Ass'n of Apt. Owners of 2987 Kalakaua*, 304 F.Supp.2d 1245, 1262 (D.Haw.2003) (finding that foreclosure and ejectment proceedings are important state interests under the *Younger* doctrine). Thirdly, the Smiths had more than an adequate opportunity to raise their challenges to the Foreclosure Action in state court (as well as in the Bankruptcy Court), but failed to do so. Furthermore, as this Court observed to Mr. Smith during the Second IPTC, he may still have an appropriate avenue for appeal within the Commonwealth's appellate courts. *See* Second IPTC *Tr.* at 16-17.

Therefore, under these circumstances, *Younger* and its progeny obligate this Court to abstain from adjudicating the Smiths' allegations. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (stating that *Younger* abstention is favored even after the plaintiffs failed to raise their federal claims in the ongoing state proceedings); *see also, Scott v. Mortgage Electronic Registration Systems, Inc., et al.*, 2004 WL 1925008 at *3-4 (E.D.Pa. Aug.27, 2004). Accordingly, the Smiths' Motion for Temporary Restraining Order is denied.

Furthermore, the *Rooker-Feldman* doctrine also prevents the Smiths from appealing the state court's foreclosure ruling in federal court. [FN11] The *Rooker-Feldman* doctrine arose from two cases [FN12] in which the Supreme Court concluded that federal courts do not have jurisdiction to review the judgments and decisions of state courts. Erwin Chemerinsky, FEDERAL JURISDICTION at § 8.1 (Aspen Law and Business, 3d ed.1999). Under the doctrine, a federal court does not have the authority to review: (1) "final adjudications of a state's highest court [FN13] or to evaluate constitutional claims that are (2) 'inextricably intertwined with the state court's [decision] in a judicial proceeding." ' *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir.1996) (citing *Blake v. Papadakos*, 953 F.2d 68, 71 (3d Cir.1992)).

FN11. Defendants have not cited to *Rooker-Feldman;* however, in their Motion to Dismiss, they do claim that the Smiths' claims are barred by *res judicata,* which, based on the facts, is an applicable and appropriate defense.

FN12. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the court concluded that the allegedly incorrect decision arrived at by a state court that had been affirmed on appeal to the state supreme court could not be addressed by a federal district court because "[t]o do so would be an exercise of appellate jurisdiction." In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Court again confirmed that "a United States District Court has not authority to review final judgments of a state court in judicial proceedings."

FN13. The Court of Appeals for the Third Circuit interprets the *Rooker-Feldman* doctrine to apply to final decisions of lower state courts. *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d at 834, 840 (3d Cir.1996).

*8 Here, on April 27, 2004, a default judgment of foreclosure was issued against the Smiths in the Montgomery County Court of Common Pleas regarding the property at the subject of the instant matter. [FN14] This was a final determination by a state court and, therefore, this Court can not and will not sit in judgment of the final determination made by the Montgomery County Court of Common Pleas. *See Rooker*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362; *Feldman*, 460 U.S. at 482; *FOCUS*, 75 F.3d 834, 840. If the Smiths would like to challenge the foreclosure, their only option is to appeal to the appropriate Pennsylvania state court.

FN14. *See* http://12.40.1 22.125/FCP2.WEB8/0/P12DIS?CASE-NO= 03-04789.

*(b) The Anti-Injunction Statute*

Under a related but alternative avenue of reasoning, the requested injunctive relief cannot be granted because this Court lacks subject matter jurisdiction over the matter because the Federal Anti-Injunction Act (the "Anti-Injunction Act") absolutely prohibits a district court from enjoining a state court proceeding,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 11

unless the injunction (a) is expressly authorized by an Act of Congress; (b) is necessary "in aid of" federal jurisdiction; or (c) would "protect or effectuate" the federal court's judgments. 28 U.S.C. § 2283. None of these provisions are applicable to the facts and legal issue involved in the instant matter. The Anti-Injunction Act has been interpreted to preclude a federal court from prohibiting judicial executions to enforce collection of a state court judgment, such as the Foreclosure Action at issue here. *See In re Glenn W. Turner Enterprises Litigation,* 521 F.2d 775, 779 (3d Cir.1975); *see also Becker v. Evans,* 496 F.Supp. 20, 21 (M.D.Pa.1980) (finding that district court lacked jurisdiction to issue an injunction against enforcement of state court judgment).

In the instant case, the Court has neither been advised of nor itself found a federal law that would permit the Court to issue the requested TRO. Furthermore, the requested injunction is not "necessary in aid of" this Court's jurisdiction, if any, over the present matter. Under this exception, federal injunctive relief is only appropriate when it is needed "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide the case." *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 295, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970).

Finally, issuing the requested injunction would not protect or effectuate any federal court judgment because there is no such judgment to consider. Because neither the Smiths' Complaint nor their Amended Complaint presents an exception to the Anti-Injunction Act, this Court lacks jurisdiction to grant the requested injunction.

*B. Analysis*

CBAS and Litton obtained a default judgment in foreclosure against the Smiths in the Montgomery County Court of Common Pleas. CBAS and Litton supported their Motion to Dismiss with strong arguments that the Smiths' claims should be dismissed because of (1) *res judicata* regarding the foreclosure judgment and (2) that the Smiths' claims are barred by the applicable statutes of limitation. [FN15] During the Second IPTC, CBAS and Litton also provided the Court with a strong argument in support of their Motion to Dismiss based on the *Rooker-Feldman* doctrine. Despite the Court's written Order, filed January 7, 2005, and the Court's indulgent requests, on the record and in open court, to Mr. Smith in an attempt to elicit a persuasive response on behalf of the Smiths that might convince the Court that it can (and should) maintain jurisdiction over this matter, the Smiths failed to provide substantive counter-argument(s) to the Defendants' request that the Smiths' complaints be dismissed with prejudice.

> FN15. Litton and CBAS also argue that the Complaint should be dismissed for lack of service. Inasmuch as Defendants apparently filed their Motion to Dismiss after only Litton received a copy of the Complaint in the mail, the Court will forego analysis of this ground for dismissal.

*1. The Smiths' Allegations in the Complaint, Filed Pursuant to the Truth-In-Lending Act,* 15 U.S.C. § 1635, *et seq. (the "TILA") and the Fair Debt Collections Practices Act,* 15 U.S.C. § 1601, *et seq. (the "FDCPA")*

*9 The Smiths claim that the mortgage and note contain usurious interest rates and involve unfair trade practices involving predatory lending practices. The Smiths also claim that Litton and CBAS violated federal law by failing to disclose the Smiths' right to cancel, failed to disclose the actual interest rate (11.99%) and violated other federally-protected consumer rights. Specifically, the Smiths allege that Litton and CBAS failed to or refused to provide them with copies of important documents related to the mortgage and note, including complete copies of those documents following settlement. The Smiths also claim that Litton and CBAS failed to properly file and notice them regarding a UCC Article 9 lien against their property. Based on these allegations, the Smiths therefore believe that the mortgage and note are rescindable under Federal Reserve Board Interpretation, 12 C.F.R. § 226, Supp. I, ¶ 23(a)(1), because certain provisions of the documents, including the consumer protection provisions, were not properly presented or disclosed.

More specifically, pursuant to 12 C.F.R. § 226.18(c), the Smiths allege that they should have received a good faith estimate copy of the mortgage and note terms. The Smiths also allege that they should have received a document indicating how they could rescind the transaction, pursuant to § 226.23(b)(1), and that they were entitled to a three (3) day "cooling off period" pursuant to 15 U.S.C. § 1601. Litton and CBAS also allegedly failed to disclose the breakdown of charges related to the mortgage and note, including how any acceleration charges would be triggered and applied. Additionally, the Smiths claim that the acceleration fees have been inflated in violation of 12

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 12

U.S.C. § 2610. Furthermore, the Smiths allege that they were never notified of the dates on which any new charges were required to be paid, pursuant to 12 C.F.R. § 226.18(p).

The Smiths also allege, pursuant to 12 U.S.C. § 85 ("Rate of interest on loans, discounts and purchases"), that the interest rate should be considered usurious because it was in excess of 7%. [FN16] However, since a plain reading of the statute belies the Smiths' allegation and, furthermore, since no response to the Motion to Dismiss has been filed, the Court is without the benefit of any legal support for the Smiths' implicit argument that an interest rate above 7% constitutes a usurious lending practice.

> FN16. The statute reads:
> Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes ... interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more, except that where by the laws of any State a different rate is limited for banks organized under state laws.... When no rate is fixed by the laws of the State, or Territory, or District, the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum, or 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run ... (emphasis added).

Finally, the Smiths allege that Litton and CBAS failed to disclose, pursuant to 15 U.S.C. § 1601, that the loan settlement fees could not be financed. The Smiths further allege that the preliminary disclosures they received, pursuant to 12 U.S.C. § 2601, stated an interest rate much lower than the one they received and failed to disclose the loan origination fees (and that this financing fee was above the maximum allowed by law).

*2. Under TILA, the Smiths' Rights to Rescind and Possible Entitlement to Damages are Time Barred*

The TILA provides that a mortgagor's right to rescind extends for a maximum of three (3) years if "the required notice or material disclosures are not delivered." According to 12 C.F.R. 226.23(a), the consumer's right to rescind:

*10 (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction

...

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, upon sale of the property, whichever occurs first.

Therefore, the Smiths' right to rescind, based on an allegation that the mortgagee failed to provide proper notice or failed to deliver material disclosures expired on the third anniversary of the consummation of the mortgage on the Smith Property. Specifically, in the instant matter, the right to rescind expired on December 21, 2001. As noted above, this action was filed on June 28, 2004. Therefore, any of the Smiths' rescission claims based on allegations of failure to disclose are time barred.

Moreover, damage claims brought pursuant to TILA have an even shorter statute of limitations than rescission claims. See 15 U.S.C. § 1640(e).

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.... ("Jurisdiction of courts; limitations on actions; State attorney general enforcement")

Therefore, as a matter of law, because the statute of limitations has run for each of the respective claims, the Smiths cannot recover from Defendants for any alleged failure to provide notice, failure to provide material disclosures or any damages resulting therefrom. See 12 C.F.R. 226.23(a) and 15 U.S.C. § 1640(e).

*3. The Yield Spread Premium*

In addition to the TILA and FDCPA claims contained

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 13

in the Complaint, the Amended Complaint alleges that the Defendants failed to disclose and committed fraud with regard to the Yield Spread Premium (the "YSP") contained within the mortgage documents.

The Court of Appeals for the Ninth Circuit, in *Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201, 1204 (9th Cir.2003), discussed the lender-paid brokers fees known as YSPs that are to be disclosed to a borrower on their respective HUD-1 Settlement Statement. That court found that a YSP is

> a payment made by a lender to a mortgage broker in exchange for that broker's delivering a mortgage ready for closing that is at an interest rate above the par value loan being offered by the lender. *See Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1007 (9th Cir.2002). The YSP is the difference between the par rate and the actual rate of the loan; this difference is paid to the broker as a form of bonus. *Id.* at 1007-08. A YSP is typically a certain percentage of the loan amount; therefore, the higher the loan is above par value, the higher the YSP paid the mortgage broker. *Id.* By choosing among various lenders and interest rates, a broker may, in effect, control his fees and, in that fashion, compete with other brokers. *Id.* For example, "a loan of 8% and no points where the par rate is 7.50% will command a greater [yield spread] premium for the broker than a loan with a par rate of 7.75% and no points." *See* RESPA Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed.Reg. 10080, 10081 (March 1, 1999) (HUD/SOP I).

*11 Additionally, according to *In re Bell*, 309 B.R. 139, 153 (Bankr.E.D.Pa.2004),

> [a] Yield Spread Premium is a bonus paid to a broker when it originates a loan at an interest rate higher than the minimum interest rate approved by the lender for a particular loan. The lender then rewards the broker by paying it a percentage of the "yield spread" (i.e., the difference between the interest rate specified by the lender and the actual interest rate set by the broker at the time of origination) multiplied by the amount of the loan. *Noel v. Fleet Finance, Inc.*, 971 F.Supp. 1102, 1106-07 (E.D.Mich.1997).

Furthermore, the *Bell* court explained:

> The statute that describes which mortgage transactions are subject to [the Home Ownership Equity Protection Act] states that it applies to certain mortgage transactions when "the total points and fees *payable by the consumer at or before closing* exceed the greater of--(i) 8 percent of the total loan amount; or (ii) $400." 15 U.S.C. § 1602(aa) (emphasis in original). The Official Staff Commentary to § 226.32 of Regulation Z provides that:
> In determining "points and fees" for purposes of this section, compensation paid by a consumer to a mortgage broker (directly or through the creditor for delivery to the broker) is included in the calculation whether or not the amount is disclosed as a finance charge. *Mortgage broker fees that are not paid by the consumer are not included.* Official Staff Commentary, 12 C.F.R. Part 226, Supp.I, § 226.32(b)(1)(ii) (emphasis in original).
> In *Noel v. Fleet Finance, Inc.*, the court held that a yield spread premium is a finance charge under TILA, but it is not a prepaid finance charge paid by the borrowers at or before consummation of the transaction that needs to be separately itemized; rather, it is paid indirectly by the borrower over the course of the loan in the form of a higher interest rate. *Noel*, 971 F.Supp. at 1110-1112. Even if the yield spread premium in this case is part of the finance charge, it clearly was not paid by the Debtor at or before closing. Therefore, the yield spread premium is not included in the points and fees calculation.

Section 8(a) of the Real Estate Settlement Procedures Act ("RESPA") prohibits kickbacks and referral fees. [FN17] *See* 12 U.S.C. § 2607(a). Section 8(c) of RESPA permits payment "for services actually performed in the making of a loan." [FN18] *See* 12 U.S.C. § 2607(c). However, RESPA does not directly address whether the payment of a YSP violates the statute. *See Bjustrom*, 322 F.3d at 1206. Furthermore, pursuant to RESPA Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), ("HUD/SOP II"), with regard to YSPs being challenged under RESPA, the two-part test to be applied by a reviewing court is the same test as set forth in RESPA Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed.Reg. 10080 (March 1, 1999) ("HUD/SOP I").

> FN17. RESPA Section 8(a) reads:
> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person. 12 U.S.C. § 2607(a).

> FN18. RESPA Section 8(c) reads in pertinent part: Nothing in this section shall be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 14

construed as prohibiting (1) the payment of a fee ... (C) by a lender to its duly appointed agent for services actually performed in the making of a loan, [or] (2) the payment to any person of ... compensation or other payment for goods or facilities actually furnished or for services actually performed.... 12 U.S.C. § 2607(c).

*12 Under the two-part test, a court is required to consider (1) "whether goods or facilities were actually furnished or services were actually performed for the compensation paid" and (2) "whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed."
Id. at 10084; HUD/SOP II at 53054.
See Bjustrom, 322 F.3d at 1206-07.

In the Amended Complaint, the Smiths claim that the basis of their claim is that the Good Faith Estimate (the "GFE") failed to disclose the YSP. [FN19] However, the Smiths admit that both the YSP and the Mortgage Brokers Fee were disclosed in the HUD-1 Settlement Statement that accompanied the mortgage and note at settlement. Nevertheless, as stated above, the YSP did not have to be disclosed until the HUD-1 Settlement Statement was issued. See In re Bell, 309 B.R. at 153 (citing Noel, 971 F.Supp. at 1106-07, 1111-12). Furthermore, under TILA, after reviewing the HUD-1 document that included the YSP, the Smiths were entitled to cancel the mortgage and note within three (3) days. They chose not to do so. Thus, the law is clear that there is nothing illegal, deceptive or fraudulent concerning the inclusion of a YSP. See Bjustrom, 322 F.3d at 1206-07.

> FN19. The Good Faith Estimate *was not attached* to the Amended Complaint, as stated within the document.

Therefore, even if *res judicata* did not act as a bar to this Court's adjudication of the Smiths' claims, for the reasons stated above, the allegations in both the Complaint and the Amended Complaint would be dismissed, as a matter of law, pursuant to Rule 12(b)(6).

*C. Protection From Frivolous Claimants*

As discussed above, *pro se* plaintiff Donald Smith is a frequent litigant in this Court. Over the last several years, Smith has harassed the courts of the Eastern District of Pennsylvania (including the Bankruptcy Court) with numerous claims against his creditors and filed frivolous relief petitions pursuant to Chapter 11 and Chapter 13 of the United States Bankruptcy Code. As discussed in more detail above, all of Smith's actions have been dismissed, including Smith's appeals. [FN20] Nevertheless, Smith's filings continue despite repeated defeats and admonitions. Smith "puts forth frivolous legal arguments in equally frivolous lawsuits that are vexatious and abusive of the judicial process." See *Frempong-Atuahene v. City of Philadelphia, et al.*, 2000 WL 233216 (E.D.Pa. Feb.24, 2000) at *1, aff'd, 263 F.3d 158 (3d Cir.2001). [FN21]

> FN20. Mr. Smith is, coincidentally, still a plaintiff in a large class action pharmaceutical litigation.

> FN21. This Court has borrowed liberally from Judge Hutton's discussion and reasoning in the *Frempong* matter and has omitted citations for the sake of easy understanding and digestion by the reader.

There appears to be no requirement that any given court or judicial officer experience a specific minimum amount of malfeasance or nonfeasance from any given litigant before acting to curtail the abusive litigant's conduct vis a vis the Court. Indeed, the Court believes that it is beneficial to act at a point in time when it can not be said that the Court is acting as a result of personal pique or impatience. This Court prefers to proceed upon a dispassionate review of record information. Therefore, this Court enjoins Donald Smith (also known as, Donald A. Smith and Donald Muhammad El Ali), and anyone who attempts to file a claim on Mr. Smith's behalf, from filing any future actions in any court of the Eastern District of Pennsylvania, including the Bankruptcy Court, without receiving the prior written authorization of this Court.

*13 Smith has filed approximately 10 lawsuits in the Eastern District of Pennsylvania during the past few years, and Smith has also appealed trial court rulings to the Third Circuit Court of Appeals. He obviously does not appreciate that every imagined wrong does not warrant a federal lawsuit. *See id.* It also goes without saying that every actual and concrete wrong does not warrant a federal lawsuit. *Id.* Nevertheless, when a party resorts to litigation, that party is bound by, *inter alia,* precedent and the applicable rules of procedure. *Id.* Legal precedent and rules of procedure level the playing field for all parties, rich or poor, small or large, sophisticated or novice. *Id.* Mr. Smith, however, either ignores precedent and rules of procedure or employs them in ways that are foreign to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 15

their purpose. *Id.* Ultimately, Smith's numerous lawsuits demonstrate that his objective is not justice but harassment and delay.

Federal courts are invested with the equitable power to issue injunctions when such issuance is necessary to effectuate orders of the court and to avoid re-litigation of identical or similar issues. *In re Packer Ave. Assoc., 884 F.2d 745, 747 (3d Cir.1989).* The All Writs Act, which codifies this equitable power, provides in pertinent part that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of the law." 28 U.S.C. § 1651(a) (1999). Section 1651(a) therefore authorizes district courts to issue an injunction, thereby restricting the access to federal courts of parties who repeatedly file frivolous lawsuits. *Abdul-Akbar v. Watson,* 901 F.2d 329, 332 (3d Cir.), *cert. denied,* 498 U.S. 806 (1990); *Wexler v. Citibank,* 1994 WL 580191, at *7 (E.D.Pa. Oct.21, 1994). Moreover, "[f]ederal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *In re Martin-Trigona,* 737 F.2d 1254, 1261 (2d Cir.1984). *Pro se* litigants, like the Smiths, are not entitled to any special handling or exceptions on such fundamental points. They do not have license to abuse the judicial process with impunity. *Wexler,* 1994 WL 580191, at *6; *Mallon v. Padova,* 806 F.Supp. 1189 (E.D.Pa.1992). The court therefore has broad discretion to protect its jurisdiction. *Lysiak v. Commissioner of Internal Revenue,* 816 F.2d 311, 313 (7th Cir.1987). *Pro se* status must not be wielded as either an Arthurian sword or an invincible shield. Enjoining a plaintiff from filing additional actions can be an appropriate sanction to curb frivolous litigation. *Id.*

On the basis of the history recounted above, this Court recognizes that Mr. Smith's litigious conduct in the Eastern District of Pennsylvania rises to the level whereby the All Writs Act should be invoked. Although the Court is abundantly aware that this remedy is extreme, it is of the view that it is warranted based on the circumstances. This Court must ensure that its limited resources are allocated in such a way as to promote and protect the interests of justice. While the Court is cognizant that it should be flexible when dealing with a *pro se* litigant, *see In re McDonald,* 489 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1972), the time has come where the Smiths should no longer expect tolerance of repeated abuse of the judicial system.

*14 Accordingly, this Court enjoins Mr. Smith from access to the federal court system in this District without prior leave of this Court. Leave of court will be freely granted upon Smith's showing through a properly filed petition that a specific proposed filing: (1) can survive a challenge under Federal Rule of Civil Procedure 12; (2) is not barred by principles of claim or issue preclusion; (3) is not repetitive or violative of a court order; and (4) is in compliance with Federal Rule of Civil Procedure 11. The Order and Injunction to follow will not apply to the filing of timely notices of appeal from this Court to the Third Circuit Court of Appeals and papers solely in furtherance of such appeals. Finally, the Court orders the Clerk of Court to mark this case (04-cv-2846) as closed.

IV. CONCLUSION

The Smiths' Complaint and Amended Complaint are being dismissed because it is clear to this Court that no relief could be granted under any set of facts that could be proved consistent with the allegations contained within any of the Smiths' stated claims. *See Hishon,* 467 U.S. at 73; *see also, Conley v. Gibson,* 355 U.S. at 45-46. In addition to this Courts' determination that all of the Smiths' claims are otherwise time-barred, including the Court's finding that there is nothing illegal, deceptive or fraudulent concerning the inclusion of a Yield Spread Premium (a "YSP"), *see Bjustrom,* 322 F.3d at 1206-07, the Smiths' allegations must be dismissed pursuant to the doctrines of *Younger* abstention, *Rooker-Feldman* and *res judicata.* Under any of these avenues of adjudication, it is abundantly clear that the Smiths can prove no set of facts in support of their claims which would entitle them to relief. *See Conley,* 355 U.S. at 45-46.

Furthermore, as discussed more fully above, this Court is denying the Smiths' Motion for a TRO because the following factors weigh against the granting the Motion: (1) as a matter of law, neither the Smiths' Complaint nor Amended Complaint can survive the Motion to Dismiss, much less lead to a verdict in Plaintiffs' favor on the merits of their claims; (2) the extent of irreparable injury from the conduct complained of is not great; (3) irreparable harm to the Defendants is not insignificant; and (4) the Commonwealth of Pennsylvania has an important interest in resolving the pending Foreclosure Action regarding the Smith Property. *See Clean Ocean Action v. York,* 57 F.3d 328, 331 (3d Cir.1995).

Additionally, the requested injunctive relief cannot be granted because this Court lacks subject matter jurisdiction over this case because the Federal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 16

Anti-Injunction Act (the "Anti-Injunction Act") absolutely prohibits a district court from enjoining a state court proceeding, unless the injunction (a) is expressly authorized by an Act of Congress; (b) is necessary "in aid of" federal jurisdiction; or (c) would "protect or effectuate" the federal court's judgments. 28 U.S.C. § 2283.

*15 Finally, as discussed in greater detail above, in addition to dismissing all of the Smiths' claims and denying the Motion for a TRO, it is with great reservation that this Court has determined that the Smiths (Donald Smith and/or Lisa Smith) must be enjoined from filing (or assisting others in filing) further actions within this District without express leave of the Court. See 28 U.S.C. § 1651(a); Abdul-Akbar, 901 F.2d at 332; Wexler, 1994 WL 580191; In re Martin-Trigona, 737 F.2d at 1261.

An appropriate Order follows.

### ORDER

AND NOW, this 4th day of February, 2005, upon consideration of the Complaint, the Defendants' Motion to Dismiss the Complaint, with prejudice, and the Memorandum of Law in Support, filed by Litton Loan Servicing, LP, and Credit-Based Asset Securitization, LLC (Docket No. 4), the failure of Plaintiffs Donald Smith and Lisa Smith to respond within fourteen (14) days to the Defendants' Motion to Dismiss or respond at all, pursuant to Local Civil Rule 7.1(c), the failure of Plaintiffs Donald Smith and Lisa Smith to attend the Initial Pretrial Conference, held at the United States Courthouse, 601 Market Street, Philadelphia, on January 4, 2005, at 9:30 a.m., pursuant to notice sent by the Court on December 7, 2004, to the Plaintiffs' address at 241 Righters Ferry Road, Bala Cynwyd, Pennsylvania, 19004, and the fact that Plaintiffs were notified by the Court at the telephone numbers provided to the Court on the Case Management Track Designation Form, dated June 28, 2004, and, additionally, in consideration of Mr. Smith's failure to appear for previous court-scheduled conferences and respect the court's notices and orders in the matter of *Donald Smith ex rel. Donald Muhammed El Ali v. Altegra Credit Co., et al.,* 02-CV-8221, and in consideration of the respective records in Mr. Smith's previous filings in the United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania and the United States Bankruptcy Court for the Eastern District of Pennsylvania, and with due consideration of Plaintiffs' Amended Verified Complaint (Docket No. 10), Plaintiffs' Motion for Temporary Restraining Order (Docket No. 11), the discussions between the parties and the Court during the Second Initial Pretrial Conference, held by the Court on January 27, 2005 (*see* Docket No. 12), the document titled "Notice" faxed to the Court by the Smiths on February 2, 2005, and Plaintiffs' failure to file a response to Defendants' Motion to Dismiss, as ordered by this Court, filed on January 7, 2005 (Docket No. 8), for the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED:

1. Defendants' Motion to Dismiss is GRANTED;

2. Plaintiffs' Complaint is DISMISSED, in its entirety;

3. Plaintiffs' Amended Complaint is DISMISSED, in its entirety;

4. Plaintiffs' Motion for Temporary Restraining Order is DENIED, with prejudice.

5. Neither Donald Smith, Donald A. Smith, Donald Muhammad El Ali nor Lisa Smith shall file or assist in filing any further actions within the United States Bankruptcy Court for the Eastern District of Pennsylvania or within the District Court for the Eastern District of Pennsylvania without providing due notice to this Court.

*16 6. To protect the integrity of the courts, Defendants, and any potential Defendants from the harassment of further frivolous litigation initiated by Donald and/or Lisa Smith (the "Smiths"), the Court issues the following injunctions:
  (a) The Court enjoins the Smiths, or any entity acting on their behalf, from filing any action in any court, state or federal, against the Defendants named in the instant action, without first obtaining leave of this Court;
  (b) The Court enjoins the Smiths, or any entity acting on their behalf, from filing any new action or proceeding in any federal court, without first obtaining leave of this Court; and
  (c) The Court enjoins the Smiths from filing any further papers in any case, either pending or terminated, in the Eastern District of Pennsylvania, without first obtaining leave of this Court.

7. In light of Mr. Smith's history of litigious conduct, the Court finds it likely that the Smiths will attempt to ignore this Court's action; therefore, the Court ORDERS the Clerk of Court to refuse to accept any submissions for filing except petitions for leave of court, unless such submissions for filing are

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 289927 (E.D.Pa.)
(Cite as: 2005 WL 289927 (E.D.Pa.))

Page 17

accompanied by an order of this Court granting leave. In the event that the Smiths succeed in filing papers in violation of this Order, upon such notice, the Clerk of Court shall, under authority of this Court's Order, immediately and summarily strike the pleadings or filings.

8. Leave of court shall be forthcoming upon the Smiths demonstrating, through a properly filed petition, that the proposed filing:
   (a) can survive a challenge under Federal Rule of Civil Procedure 12;
   (b) is not barred by principles of claim or issue preclusion;
   (c) is not repetitive or violative of a court order; and
   (d) is in compliance with Federal Rule of Civil Procedure 11.

9. The Court ORDERS the Smiths to attach a copy of this Order and Injunction to any such petition for leave of court.

10. The Court ORDERS the Clerk of Court to file and enter into the docket this Memorandum Opinion, Order, and Injunction and provide a copy of same to all parties in each case against whom Donald and/or Lisa Smith has actions pending in the Eastern District of Pennsylvania.

11. The Court DENIES any remaining motions filed by the Smiths or anyone acting on their behalf not specifically enumerated herein.

12. The Court ORDERS the Clerk of Court to mark this case as CLOSED.

It is so ORDERED.

2005 WL 289927 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

. 2004 WL 2696423 (Trial Motion, Memorandum and Affidavit) Defendants Litton Loan Servicing, Lp's and Credit-Based Asset Securitization, Llc's Motion to Dismiss The Complaint (Oct. 08, 2004)

.        2:04CV02846            (Docket) (Jun. 28, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.