IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERMEC IP CORP., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04-CV-357 (GMS) |
| SYMBOL TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

**SYMBOL'S RULE 30(b)(6) NOTICE OF DEPOSITION
TO INTERMEC IP CORPORATION**

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, Defendant Symbol Technologies, Inc. ("Symbol"), by and through its attorneys, will

take the deposition upon oral examination of Intermec IP Corporation ("Intermec") before a

notary public or other officer authorized by law to administer oaths, at the offices of Connolly,

Bove, Lodge & Hutz, L.L.P., 1007 North Orange Street, Wilmington, DE 19801, or at such

other time and place as the parties agree, commencing on August 18, 2005, and continuing day-

to-day thereafter until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Rule 30(b)(6) of the

Federal Rules of Civil Procedure, Intermec is required to designate and produce for deposition

one or more officers, directors, or managing agents, or other persons who consent to testify on its

behalf, who shall testify as to matters known or reasonably available to Intermec concerning

each of the Topics set forth below.

PLEASE TAKE FURTHER NOTICE that, pursuant to Rule 30(b)(2) of the Federal Rules of Civil Procedure, the method by which testimony shall be recorded will be by stenographic transcription and/or by videotape. You are invited to attend and cross-examine.

## DEFINITIONS AND INSTRUCTIONS

1.    The Definitions and Instructions set forth in Matrics' [now Symbol's] First Set of Requests for Production of Documents and Things to Intermec IP Corp. are incorporated herein by reference.

2.    Symbol requests that any responses to these and any other Topics shall quote each Topic in full immediately preceding the response.

3.    Symbol requests that Intermec produce in advance all relevant documents that are responsive to these Topics. To the extent such documents are not available in advance, Intermec is requested to bring such documents with it to the deposition.

## TOPICS FOR EXAMINATION

Topic No. 1

a.    Conception of the alleged invention of each asserted claim of the Intermec Asserted Patents.

b.    Corroboration of conception of the alleged invention of each asserted claim of the Intermec Asserted Patents.

c.    Reduction to practice of the alleged invention of each asserted claim of the Intermec Asserted Patents.

d.    Corroboration of the alleged reduction to practice of each asserted claim of the Intermec Asserted Patents.

e.    Alleged diligence between the date of conception and the date of reduction to practice for each asserted claim of the Intermec Asserted Patents.

f.    Corroboration of the alleged diligence between the date of conception and the date of reduction to practice for each asserted claim of the Intermec Asserted Patents.

g.      All written descriptions of the alleged invention of each asserted claim of the Intermec Asserted Patents.

h.      The alleged chain of title from the named inventors of each of the Intermec Asserted Patents.

## Topic No. 2

a.      The preparation and/or prosecution of each of the Intermec Asserted Patents.

b.      Communications to and from: (a) the U.S. Patent and Trademark Office, (b) the Attorney(s) of record, and (c) any other attorney or agent, concerning each of the Intermec Asserted Patents, including but not limited to all documents presented to the Examiners of the applications that issued as the Intermec Asserted Patents.

c.      Any Counterpart to each of the Intermec Asserted Patents, whether pending, issued or abandoned.

d.      Information Disclosure Statements and PTO-1449 Forms submitted to the U.S. Patent and Trademark Office during prosecution of each of the Intermec Asserted Patents and the circumstances as to how and when Intermec or the inventors, applicants, assignees or their attorneys and agents for each of the Intermec Asserted Patents became aware of any references cited in such Information Disclosure Statements or Forms.

e.      Prior art to the alleged inventions claimed or disclosed in each of the Intermec Asserted Patents, including any such prior art asserted by any person in any court or patent office proceeding or identified in any search by Intermec or the inventors, applicants, assignees or their attorneys and agents for each of the Intermec Asserted Patents.

f.      The first use, first offer to sell, and/or first sale of any product, prototype or developmental version of a product that, when used, incorporates or performs the subject matter described and/or claimed in any of the Intermec Asserted Patents.

## Topic No. 3

a.      Any alleged long felt but unmet need for the subject matter described and/or claimed in each of the Intermec Asserted Patents or unexpected result achieved thereby.

b.    Any alleged "commercial success" for the subject matter described and/or claimed in each of the Intermec Asserted Patents.

c.    Any alleged "failure of others" to arrive at the subject matter described and/or claimed in each of the Intermec Asserted Patents.

d.    Secondary considerations or other objective evidence of nonobviousness for subject matter described and/or claimed in each of the Intermec Asserted Patents.

Topic No. 4

a.    The identify, structure, function, operation, design and development of any Intermec Product that Intermec contends is covered by any asserted claim of the Intermec Asserted Patents.

b.    The marking of any Intermec Product with the patent number of any of the Intermec Asserted Patents.

c.    The identity of any product licensed under any claim of the Intermec Asserted Patents.

d.    The marking of any licensed Product with the patent number of any of the Intermec Asserted Patents.

Topic No. 5

a.    Intermec's contentions concerning any alleged damages sustained by Intermec as a result of alleged patent infringement by Symbol, including any contentions, positions, or assertions to be made concerning theories of price erosion, lost profits, reasonable royalty, established royalty and lost sales, and any other basis for alleged compensation under 35 U.S.C. § 284.

b.    The promotional, marketing, sales and advertising activities with respect to any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

c.    The relevant market(s) for any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

d.    The monthly unit volume and dollar revenue, by customer, associated with any Intermec Product embodying the subject matter disclosed and/or claimed in the

Intermec Asserted Patents that is made, used, sold, offered for sale or otherwise transferred in the United States.

e.    The unit costs associated with manufacturing, selling or otherwise transferring any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

f.    For any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents, and for each year from the first commercialization by Intermec of that Product, gross revenues, gross profits, gross profit margins, net profits and net profit margins on sales of each product.

g.    The actual, projected, or desired return for the manufacture and/or sale of any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

h.    The percentage of Intermec's total sales volume made outside the United States.

i.    Intermec's royalty payments and future obligations, if any, to any third party with respect to any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

j.    Intermec's cost of goods for any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

k.    Intermec's actual or projected costs of research, development and testing of any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

l.    Intermec's cost of developing the capacity to manufacture any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

m.    Intermec's gross and incremental profit margins for any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

n.    Intermec's projections or expectations, since 1998, regarding future sales and/or anticipated profitability for any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

o.    Intermec's pricing of and price changes for any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

p.    The nature, timing, extent, cost or business rationale for any promotional practices engaged in by Intermec for any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

q.    Intermec's actual or approximate cost of working capital.

5

r.      Intermec's actual or approximate cost of borrowing.

s.      Competitors or competitive products in the market for any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

t.      Market share information regarding each of Intermec's, Symbol's, and/or other manufacturers' Products that compete with any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

u.      Actual or potential customers for any Intermec Product embodying the subject matter disclosed and/or claimed in the Intermec Asserted Patents.

Topic No. 6

a.      Intermec's "Rapid Start Licensing Program."

b.      Any license, or effort to license, rights in any patent, copyright, trademark or other intellectual property concerning RFID technology, including but not limited to the Intermec Asserted Patents or any Counterpart, to any person or entity, and the policies, practices or standards that Intermec uses for such licensing.

c.      Any license granted by another to Intermec of rights in any patent, copyright, trademark or other intellectual property concerning RFID technology.

d.      For each year from 1998 through the present, gross royalties and net royalties received under licenses with third parties with respect to any of the Intermec Asserted Patents.

e.      Any negotiations with any third party for an agreement that transfers any rights under any of the Intermec Asserted Patents regardless of whether such agreement was ever executed.

f.      Any assignment, license, sublicense, right, privilege, or immunity from suit ever requested by Intermec, or offered or granted to Intermec, under any patents of third parties which cover RFID technology.

6

Topic No. 7

    a.    The current and/or past ownership of any right, title or interest in each of the Intermec Asserted Patents, and any non-disclosure agreements, development agreements, funding agreements or consent agreements not to enforce such patents.

    b.    Any non-disclosure or confidentiality agreements between Intermec and any other person or entity, concerning any product, prototype, or developmental version of a product, which when used, incorporates or performs the subject matter of the alleged inventions disclosed and/or claimed in any of the Intermec Asserted Patents.

Topic No. 8

    a.    Intermec's first awareness of the Accused Products, and any alleged infringement of any of the Intermec Asserted Patents by such Products.

    b.    Intermec's discussions and/or communications with Symbol (or Matrics) regarding the Accused Products.

    c.    Intermec's decision to file this action.

    d.    Intermec's earliest knowledge or understanding of the identify, structure, function, operation, or design of the Accused Products.

    e.    All analyses, studies, testing, and/or investigations of any of Accused Products.

    f.    Intermec's contentions concerning the alleged validity, scope, enforceability and patentability of the asserted claims of the Intermec Asserted Patents.

    g.    Intermec's contentions concerning the alleged infringement by Symbol of the asserted claims of the Intermec Asserted Patents.

    h.    Any Intermec policy, strategy, plan, or practice, whether formal or informal, regarding patents, including filing patent applications, acquiring patents or patent applications from other persons, exploiting patents or patented technology, charging other persons with patent infringement, enforcing patents, licensing patents or patented technology, cross-licensing patents or patented technology, or marking products with patent numbers.

    i.    Any compensation or other consideration received by the inventors of the Intermec Asserted Patents in connection with this lawsuit.

j.    Intermec's communications with anyone other than Symbol or Matrics concerning any of the Intermec Asserted Patents, excluding communications relating to the prosecution of the Intermec Asserted Patents.

Topic No. 9

a.    All opinion(s) of counsel and pre-filing investigations regarding infringement, validity, and/or enforceability of any of the Intermec Asserted Patents.

b.    Each study, search, investigation or opinion concerning any of the Intermec Asserted Patents, other than opinions of counsel.

c.    Intermec's interpretation of each claim term of the asserted claims of the Intermec Asserted Patents.

d.    Communications between Intermec or its public relations agents and any third party regarding any claim or potential claim of infringement of any of the Intermec Asserted Patents.

e.    All allegations by Intermec of infringement of any of the Intermec Asserted Patents by anyone other than Symbol (or Matrics).

Topic No. 10

a.    The corporate and/or business relationship or affiliation between Intermec IP Corp. and Intermec Technologies, Inc.

Topic No. 13

a.    Intermec's involvement in any proposed, emerging or adopted RFID standard or specification.

b.    Intermec's communications or submissions to EPCGlobal, AIM, ISO or IEC concerning any proposed, emerging or adopted RFID standard or specification.

c.    The participation by H. Sprague Ackley and/or any other employee of Intermec in any proposed, emerging or adopted RFID standard or specification by AIM.

Topic No. 14

    a.     Intermec's record retention policies and procedures.

    b.     Intermec's search of its electronic databases in responding to Symbol's document requests herein.

    c.     How Intermec's electronic information is stored and retrieved.

    d.     Electronic mail or messaging systems used by Intermec.

CONNOLLY BOVE LODGE & HUTZ LLP

/s/Arthur G. Connolly, III
Kevin F. Brady (#2248)
Arthur G. Connolly, III (#2667)
The Nemours Building
1007 North Orange Street
Wilmington, DE  19801
(302) 658-9141

*Attorneys for Defendant*
*Symbol Technologies, Inc.*

OF COUNSEL:

Eric J. Lobenfeld
Ira J. Schaefer
Tedd W. Van Buskirk
Jaasi J. Munanka
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York  10022
(212) 918-3000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 5, 2005, true and correct copies of the foregoing were served on the following counsel of record for Defendant in the manner indicated:

**_By Hand Delivery_**
Jack B. Blumenfeld, Esquire
MORRIS NICHOLS ARSHT & TUNNELL
1201 N. Market Street
Wilmington, DE 19801

**_By FedEx_**
Frederick A. Lorig, Esquire
Bruce R. Zisser, Esquire
BRIGHT & LORIG, P.C.
633 West Fifth Street
Suite 3330
Los Angeles, CA  90071

Carson Veach, Esquire
Leland W. Hutchinson, Jr., Esquire
Jennifer Fitzgerald, Esquire
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL  60606

/s/ Arthur G. Connolly, III
Arthur G. Connolly, III (#2667)