IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERMEC IP CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-357 (GMS) |
| | ) | |
| SYMBOL TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER</u>**

A hearing is scheduled to take place before the court at 9:30 a.m. on Wednesday, September 7, 2005, in the above-captioned manner. The purpose of the hearing to give the parties an opportunity to present their respective positions regarding the meanings of certain disputed terms in the patents in suit. After reviewing the parties' submissions, the court directs the parties to specifically address the following inquiries at the hearing:

1. In U.S. Patent No. 5,528,222 ("the '222 patent"), is there case law, preferably from the Federal Circuit, addressing the situation in which the drawings and/or figures of the patent are inconsistent with the written description? More specifically, in the event that the court determines that the written description of Figure 2, for example, is inconsistent with the figure itself, does the case law give any guidance as to the proper manner of resolving the inconsistency in the context of claim construction?

2. The parties appear to disagree on the meaning of "stacked" as used in the '222 patent. However, the defendant did not explicitly proffer its proposed definition of that term in the joint claim chart. Therefore, the court directs the defendant to present its proposed definition at the September 7 hearing. The court further directs the defendant to provide its proposed definition to the plaintiff sufficiently in advance to permit the plaintiff to digest the

        construction and prepare a response for presentation at the hearing.

3.      The plaintiff proposes that the court construe both "stacked" and "coplanar" as used in the '222 patent with the phrase "electrical plane." However, the plaintiff failed to explicitly proffer its proposed definition of "electrical plane" in the joint claim chart. Therefore, the court directs the plaintiff to present its proposed definition at the September 7 hearing. The court further directs the plaintiff to provide its proposed definition to the defendant sufficiently in advance to permit the defendant to digest the construction and prepare a response for presentation at the hearing. Moreover, if an electrical plane is a "metal layer," as the plaintiff suggests (D.I. 96 at 6), does not that definition exclude the embodiment depicted in Figure 2 since it shows a metal contact 222 on top of a metal bump 225 on top of a metal antenna 230? Stated differently, if "not stacked" refers to not stacking electrical planes, and if an electrical plane is a "metal layer," then does the seemingly obvious stacking of metal layers in Figure 2 exclude it as an embodiment of a tag without stacking? Finally, is the plaintiff's description of an electrical plane as a "metal layer" (D.I. 96 at 6) coextensive and consistent with its description of an electrical plane as the same "substrate or 'dielectric layer'" (D.I. 71 at 19)?

4.      Regarding the term "coplanar" as used in the '222 patent, the court requires further explanation of the defendant's contention that the connecting lines 225 and the antenna 230 in Figure 2 share a common plane (D.I. 97 at 13) since it appears from the figure that the connecting lines are actually depicted as being stacked on top of the antenna. Is it the defendant's contention that two components or elements can share a common plane if each has an edge touching the same plane? Furthermore, is it the defendant's contention that "a

single plane of wiring" means "no vias, crossovers, etc."? Is it possible to have a single plane of wiring without having the wiring be in the same physical or geometric plane?

5. The defendant, in discussing the term "connecting lines" of the '222 patent, argues that "the only difference between Figure 2 and the prior art Figure 1B is the use of a 'connecting line' in the former and conductive adhesive in the latter to connect chip contacts to circuit contacts." (D.I. 97 at 17.) However, Figure 1B includes antenna terminals 155, but Figure 2 does not. Is there support in the intrinsic record for the proposition that the antennas of Figure 2 also contain antenna terminals? Moreover, in explaining Figure 2, the specification reads as follows:

> The chip is connected to the antenna lines by means of bumps on the chip, either plated gold bumps for thermocompression bonding or C4 solder bumps for solder bonding are preferred. *The bumps 225 then become the connecting lines.*

'222 patent, col. 4, ll. 13-17 (emphasis added). Is this observation consistent with the defendant's proposed construction of "connecting lines" as "electrical conductor excluding the bonding types of thermal compression, single point bonding, C4 bonding, and conductive adhesive"?

6. Regarding the "grouping" limitations in U.S. Patent No. 5,995,019 ("the '019 patent"), aside from the parties' disagreement over the exclusion of tags selecting themselves, the court requires clarification of the defendant's assertion that the plaintiff's proposed construction of the term "physical wave characteristic" limits the invention to a preferred embodiment (D.I. 97 at 24), in light of the fact that the plaintiff's proposal in the joint claim construction chart uses the phrase "including, but not limited to." The court also requires clarification of the defendant's assertion that tags selecting themselves is the same as "grouping based on

a signal sent from the base station matching the information stored in the tag." (D.I. 69 at 26.) Moreover, assuming those two things are the same, how does the *inclusive* specification language quoted in the defendant's brief (i.e., ". . . is well within the scope of the invention, as is the combination . . . . ," and "The tag group selection parameters may also include . . . .") (id.) demonstrate that the patentee *excluded* tags selecting themselves? Finally, the court requires clarification of the plaintiff's assertion that the sentence, "Rather, 'tags' select themselves according to a signal sent from the 'base station'" is an ambiguous statement that was not necessary to distinguish over the prior art. Is the import of this alleged disclaimer informed by the examiner's statement "that claims 29 and 30 require that the wave characteristic (amplitude) be used to define groups, the responses in both Brophy and Cotie read on that limitation"? (D.I. 70, Attach. 11, Tab. 6 at 3, ll. 13-15.) Further, does any Federal Circuit case law give guidance as to the proper course of action when the patentee disclaims more than necessary to avoid prior art during prosecution?

7. Is it court correct in inferring that the parties do not dispute that the meaning of the phrase "communicating with the tags in each defined group" in claim 1 of the '019 patent is "communicating with all of the tags in each group as grouped"? (See D.I. 96 at 24; D.I. 97 at 26 n.4.)

8. The court requires clarification of the plaintiff's assertion that elimination of the word "defined" in claims 9 and 18 of the '019 patent leads to the conclusion that the tags need not be read "as grouped." (D.I. 96 at 25.) The court also requires clarification of the plaintiff's assertion that the defendant's proposed construction of "reading the RF tags in each group" eliminates further subdivision into smaller groups. (Id.) Lastly, the court requires

      clarification of the defendant's assertion that the plaintiff's proposed construction (i.e., plain and ordinary meaning) renders the invention "unnecessary." (D.I. 69 at 28.)

9. Regarding the term "backscattered" in U.S. Patent No. 5,912,632 ("the '632 patent"), the court requires clarification of the plaintiff's assertion that "it would be imprecise to say that [passive tags] 'rebroadcast' the RF signal" (D.I. 71 at 21), in light of the specification's description of active tags: "The battery supplies energy to run the active tag electronics, but not to broadcast the information from the tag antenna," '632 patent, col. 1, ll. 41-43. In other words, if active tags can broadcast without using battery power, why is it imprecise to construe "backscattered" for passive tags to include rebroadcasting? The court also requires clarification of the plaintiff's assertion that the intrinsic record supports its contention that "at the carrier frequency" is too narrow. (D.I. 96 at 27.)

10. Because this court has an extremely high number of patent cases on its docket, it is well aware of *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). Thus, it is not necessary for the parties to engage in lengthy presentations about that case at the hearing. In other words, the court does not wish to be presented with large block quotes from *Phillips* that counsel simply reads verbatim. Nevertheless, if a particular phrase or aspect of *Phillips* is relevant, counsel should not hesitate to bring it to the court's attention. The court merely directs the parties to be judicious in the quotations they choose to present.

IT IS HEREBY ORDERED THAT:

      The parties shall allocate a sufficient portion of their respective presentation times in order to fully address the above inquiries.

Dated: August 31, 2005            /s/ Gregory M. Sleet
                                                           UNITED STATES DISTRICT JUDGE